UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM WATTS, | ) |
| | ) |
| Plaintiff, | ) Case: 1:25-cv-07166 |
| | ) |
| v. | ) |
| | ) |
| AVANATH CAPITAL MANAGEMENT, LLC, | ) Jury Trial Demanded |
| | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff, William Watts, ("Plaintiff"), by and through the undersigned counsel, hereby files this Complaint against Avanath Capital Management, LLC, ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 et seq. as amended, ("ADA") seeking redress for Defendant's failure to accommodate Plaintiff's disability and Defendant's retaliation against Plaintiff for engaging in a protected activity under the ADA.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 as the ADA, 42 U.S.C. §12101 *et seq*. is a federal statute.

3. Venue of this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(b) insofar as a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to jurisdiction under the ADA of 1990, 42 U.S.C. §12101, *et seq*. have been satisfied.

5. Plaintiff filed a charge of employment discrimination on the basis of disability [and retaliatory discharge] with the Equal Employment Opportunity Commission ("EEOC") (attached hereto as Exhibit "A").

6. Plaintiff received a Notice of Right to Sue from the EEOC (attached hereto as Exhibit "B").

7. This Complaint has been filed within ninety (90) days of Plaintiff's receipt of the EEOC's Dismissal and Notice of Right to Sue.

## THE PARTIES

8. Plaintiff, Wiliam Watts, is a natural person, over 18-years-of-age, who at all times relevant to the allegations in this Complaint resided in Will County, Illinois.

9. Defendant, Avanath Capital Management, whose address is 16 West 610 Honeysuckle Rose Lane, Willowbrook, IL 60527-6792, is a limited liability company specializing in Property Management and Investing that at all times material to the allegations in this Complaint was doing business in and for DuPage County, Illinois.

10. Plaintiff was employed by Defendant as an "employee" within the meaning of the ADA, 42 U.S.C. §12111(4).

11. During the applicable limitations period, Defendant has had at least fifteen employees, has been an "employer" as defined by ADA, and has been engaged in an industry affecting commerce within the meaning of 42 U.S.C. §12111(5)(A).

**BACKGROUND FACTS**

12. Plaintiff worked for Defendant as a maintenance supervisor from on or around December 9, 2024, until Plaintiff's unlawful termination on or around May 27, 2025.

13. Plaintiff was the maintenance supervisor for an apartment building owned and operated by Avanath Capital Management, LLC, called Acclaim at Hinsdale Lake

14. Within two weeks of beginning his employment, Plaintiff began experiencing severe and ongoing health issues.

15. These health issues included difficulty breathing, persistent coughing, and other cold and flu symptoms.

16. Plaintiff realized that the apartment building he was working in was filled with black mold.

17. This mold was found in both the apartment units and the basement area that the Plaintiff was responsible for managing.

18. Plaintiff informed his employer about the pervasive mold problem.

19. Defendant had already been aware of the mold issue.

20. Plaintiff attempted to work through the severe respiratory illness and symptoms.

21. Regardless of Plaintiff's disability, he was able to perform the essential functions of his job with or without reasonable accommodations.

22. Plaintiff is a "qualified individual" as defined under the ADA.

23. On or around March 2025, Plaintiff informed his immediate manager, Sonia Russel that he believed the moldy conditions were making him ill.

24. Despite this report, no action was taken to address the mold.

25. Plaintiff's health continued to deteriorate.

26. Plaintiff, despite trying to work through his illness, was experiencing worsening symptoms to the extent that he felt as if he was dying.

27. Plaintiff visited his doctor, who listened to Plaintiff's lungs, performed an x-ray, and diagnosed Plaintiff with bilateral pneumonia.

28. The doctor informed Plaintiff that both of his lungs were filled with fluid.

29. The doctor then explained that the feeling of drowning that Plaintiff was experiencing was because he actually was drowning due to the liquid in his lungs.

30. Plaintiff was prescribed antibiotics and given an excuse letter for time off work through March 21, 2025.

31. The doctor also instructed Plaintiff to return to the doctor's office if Plaintiff's condition did not improve.

32. On or around May 21, 2025, Plaintiff returned to the doctor due to a lack of improvement in his health symptoms.

33. During this return to the doctor, Plaintiff was prescribed two inhalers, a nebulizer, and another round of antibiotics.

34. The doctor also provided an additional excuse letter for taking off work through March 27, 2025.

35. Plaintiff texted photos of his doctor's notes to his employer and informed them that he had been diagnosed with bilateral pneumonia.

36. Plaintiff, despite being sick, continued to perform work duties from home, placing orders and performing other job-related tasks to the best of his ability.

37. On or around May 27, 2025, Plaintiff was able to return to work.

38. Plaintiff provided the doctor's notes and informed the regional manager, Robert Clark, that the moldy conditions were the root cause of his illness.

39. The same day, on or around May 27, 2025, Robert Clark terminated Plaintiff's employment.

40. Robert Clark cited job performance as the reason for the termination.

41. This was the first time Plaintiff had been made aware of any performance issues.

42. Plaintiff received no previous warnings, no write-ups, or other indications that his job performance was problematic prior to the termination.

43. Since being terminated, Plaintiff has continued to deal with the illness, and he is still suffering from the effects of mold exposure and pneumonia.

44. Plaintiff was discriminated against based on his disability.

45. Plaintiff's disability was caused by the mold present in the apartment units and basement, which was an issue ignored by Defendant.

46. Plaintiff requested accommodations by asking them to address the mold issue so that he would not have to suffer continuous side effects from the illness.

47. Defendant further denied providing an unpaid leave as an accommodation to Plaintiff as he recovered from the illness.

48. Defendant failed to engage in an interactive process to determine the appropriate accommodations as required by the ADA.

49. Defendant ultimately terminated Plaintiff because of Plaintiff's protected activity insofar as he requested reasonable accommodations through a request for unpaid leave and for Defendant to investigate and act on the mold presence issue.

50. Ultimately, on or about May 27, 2025, Plaintiff was terminated on the basis of Plaintiff's disability and for engaging in a protected activity as described above.

51. The purported justification for termination was unlawful discrimination on the basis of disability or because Defendant perceived Plaintiff as disabled.

52. Plaintiff can show that he engaged in statutorily protected activity—a necessary component of his retaliation claim—because Plaintiff requested reasonable accommodations.

## COUNT I
### Violation of the Americans with Disabilities Act
### (Failure to Accommodate)

53. Plaintiff repeats and re-alleges paragraphs 1–52 as if fully stated herein.

54. By virtue of the conduct alleged herein, Defendant engaged in unlawful employment practices by failing to accommodate Plaintiff's disability in violation of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq*.

55. Plaintiff is a qualified individual with a disability.

56. Defendant was aware of the disability and the need for accommodations.

57. Defendant failed to engage in the interactive process to determine the appropriate accommodations after Plaintiff requested reasonable accommodations.

58. Plaintiff's reasonable accommodations that was requested was not an undue burden on Defendant.

59. Defendant did not accommodate Plaintiff's disability.

60. Plaintiff is a member of a protected class under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §12101 *et seq*., due to Plaintiff's disability.

61. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

62. As a direct and proximate result of the failure to accommodate described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other

employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## COUNT II
### Violation of the Americans with Disabilities Act
### (Retaliation)

63. Plaintiff repeats and re-alleges paragraphs 1–52 as if fully stated herein.

64. Plaintiff is a member of a protected class under 42 U.S.C. §12101, *et seq*.

65. During Plaintiff's employment with Defendant, Plaintiff requesting accommodations.

66. As such, Plaintiff engaged in protected conduct and was protected against unlawful retaliation by Defendant under the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*.

67. By virtue of the foregoing, Defendant retaliated against Plaintiff based on Plaintiff requesting accommodations, thereby violating the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, *et seq*.

68. Plaintiff suffered an adverse employment action in retaliation for engaging in protected activity.

69. Defendant acted in willful and/or reckless disregard of Plaintiff's protected rights.

70. As a direct and proximate result of the retaliation described above, Plaintiff has suffered and continues to suffer loss of employment, loss of income, loss of other employment benefits and has suffered and continues to suffer mental anguish, distress, humiliation, and loss of enjoyment of life.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court find in Plaintiff's favor and against Defendant as follows:

a. Back pay with interest;

b. Payment of interest on all back pay recoverable;

c. Front pay;

d. Loss of benefits;

e. Compensatory and punitive damages;

f. Reasonable attorneys' fees and costs;

g. Award pre-judgment interest if applicable; and

h. Award Plaintiff any and all other such relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby requests that all issues be submitted to and determined by a jury. Dated this 26th day of June 2025.

/s/ *Chad W. Eisenback*
**CHAD W. EISENBACK, ESQ.**
IL Bar No.: 6340657
**SULAIMAN LAW GROUP LTD.**
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (331) 307 - 7632
Fax (630) 575 - 8188
ceisenback@sulaimanlaw.com
*Attorney for Plaintiff*